IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GRM Resources Pte. Ltd., | * | Civil Action No. |
| Plaintiff, | * | |
| | | ECF Case |
| v. | * | |
| | | IN ADMIRALTY |
| XCoal  Energy & Resources | * | |
| Defendant, | * | |
| and | * | |
| Bank of America N.A. | * | |
| The Bank of New York/Mellon | | |
| Commerzbank AG | * | |
| Deutsche Bank AG | | |
| HSBC Bank (USA), N.A. | * | |
| JPMorgan Chase Bank, N.A. | | |
| Standard Chartered Bank | * | |
| UBS AG | | |
| Wells Fargo Bank, N.A. | * | |
| Garnishees. | * | |

**VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF
PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**

GRM Resources Pte. Ltd. ("GRM") brings this action against XCoal Energy and

Resources ("XCoal") *quasi in rem* pursuant to Supplemental Rule B for Certain Admiralty and

Maritime Claims, requesting the issue process of maritime attachment and garnishment to

Garnishees and states as follows:

**Jurisdiction and Venue**

1.      This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. §

1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h).  GRM further brings this

action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, 8 because it involves a maritime

transaction (charter parties) and GRM hereby demands security for arbitration proceedings, to

proceeding in the United States (the "Arbitration"), pursuant to the parties' contract.

2.      The arbitration agreement between GRM and XCoal is contained in clause 22 of

the contractual documentation between the parties (the "Arbitration Agreement"), as follows:

> DISPUTE RESOLUTION: All disputes arising out of or in connection with this Contract
> from time to time including a dispute as to the validity or existence of this Contract
> and/or this Section 22 and which the Parties hereto fail to settle shall be finally settled by
> arbitration in New York, New York, conducted in the English language by three
> arbitrators pursuant to the rules of the International Chamber of Commerce ("ICC"),
> provided, however, that unless the Parties agree otherwise: (i) the third arbitrator, who
> shall act as chairman of the tribunal, shall be chosen by the two arbitrators appointed by
> or on behalf of the Parties. If he is not chosen and nominated to the ICC for appointment
> within 30 days of the date of confirmation by the ICC of the later of the two party-
> appointed arbitrators to be confirmed, he shall be chosen by the ICC

3.       Venue is proper in this District because the Garnishees, within the meaning of

Supplemental Rule B, are located, can be found, and/or can be served with process in this

District, including as set out in plaintiff's submissions in 1:21-cv-00766-ALC *Classic Maritime
Inc. v. XCoal Energy and Resources* filed in this Court.

4.      Venue is also proper in this District because Defendant's property is or soon will

be in this District.

5.      Defendant cannot be found in this District within the meaning of Supplemental

Rule B, including as set out in this Court's Order and plaintiff's submissions in 1:21-cv-00766-

ALC *Classic Maritime Inc. v. XCoal Energy and Resources* filed in this Court.

## The Parties

6.      GRM is a corporation organized under the laws of Singapore and is a buyer of

coal for ocean transportation.

7.      XCoal is a corporation organized under the laws of the Commonwealth of

Pennsylvania, and entered into a contract with GRM to sell coal including ocean transportation

for delivery of that coal.

8.      Garnishees are entities with their Resident Agents located in this District which,

on information and belief as detailed below, GRM reasonably believes hold accounts which are

the property of and/or owing to XCoal.

**Facts**

9.      On or around 1 December 2020, GRM entered into a contract to purchase 75,000 MT +/- 10% of BEFH XCoal U.S. High CV Thermal Coal (the "Cargo") from XCoal on commercial terms stated in the email from GRM's Mr. Manish Satnaliwala and XCoal's Mr. Durgesh Pathak.  These commercial terms were incorporated into an execution copy of the Sales Contract that Mr. Pathak sent to Mr. Satnaliwala on 2 December 2020 (the "Contract").

10.      Pursuant to clause 4 of the Contract, the loading period for the Cargo was 21 – 30 January 2021. By an email dated 28 December 2020 from Mr. Pathak, XCoal explained its likely inability comply with this loading period, instead hinting at loading in quarter 2 of 2021. Mr. Pathak's email confirmed that, "Our current best estimate is early Q2 2021, though we continue to work on expediting the shipment. Should an earlier loading be possible, we will inform immediately". By a further email dated 6 January 2021 from Mr. Pathak, XCoal reiterated the position that "based on the current visibility available with us, loading of the shipment for GRM Resources is expected to happen in early Q2 2021", and urged GRM to "reconsider the revised loading period".

11.      As Mr. Satnaliwala confirmed in his reply email of 30 December 2020, GRM was unable to agree deferring the loading period to quarter 2 of 2021. The same email has stated that if XCoal is unable to confirm its performance, it will be responsible for GRM's market losses.

12.      By a letter dated 8 January 2021 from BlackStone & Gold LLC ("BG", as GRM's lawyers), GRM notified XCoal of, among other things, the following:

(a)      XCoal's declarations of its inability to comply with the contractual shipment period constitutes a repudiation of the Contract or otherwise a material breach of its

obligations that has not been remedied; and further that this constitutes an Event of Default under Clause 21(c) or (d) of the Contract.

(b)     Without prejudice to GRM's right to terminate the Contract at law, GRM gave XCoal written notice under clause 21 of the Contract, that if the Event of Default remains unremedied until 15 January 2021, the Contract will be designated as terminated with effect from 16 January 2021 without further notice. GRM will then seek to claim its market losses arising from XCoal's breach of the Contract.

13.     XCoal failed to remedy the Event of Default. As such, by a further letter dated 26 January 2021 from BG, GRM notified XCoal of the termination of the Contract as of 16 January 2021.

14.     Given XCoal's late repudiation, GRM has been unable to secure substitute cargo for end January 2021. GRM made enquiries in the market and obtained quotes for substitute cargo CFR Kandla with February/March loading, at $110 per metric ton.

15.     XCoal accordingly owes GRM damages of the difference between the market price and Contract price, at least $1,818,750.00, *i.e.* (US$110 less US$85.75 pmt) x 75,000MT.

## Garnishees

16.     XCoal is not found within the Southern District of New York but does have goods, chattels, credits, bills of lading, debts, effects and monies, funds, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the jurisdiction.

17.     Classic has specific information and details for bank accounts within the district belonging to XCoal at Citibank, N.A. and PNC Bank N.A., which accounts upon information and belief XCoal has used recently to pay other charterers and creditors.

18.     It is believed that further accounts belonging to XCoal may be present at the following institutions:

Bank of America N.A.

The Bank of New York/Mellon

Commerzbank AG

Deutsche Bank AG

HSBC Bank (USA), N.A.

JPMorgan Chase Bank, N.A.

Standard Chartered Bank

UBS AG

Wells Fargo Bank, N.A.

**Count I – Breach of Maritime Contract**

19.     GRM incorporates the above paragraphs as if fully set forth herein.

20.     XCoal breached its maritime contract with GRM as set out above.

21.     GRM therefore demands judgment, as set out more fully below.

**Count II: Maritime Attachment and Garnishment (Rule B)**

22.     GRM incorporates the above paragraphs as if specifically set forth herein.

23.     GRM seeks issue of process of maritime attachment and garnishment so that it may obtain payment for the amounts due to it in damages.

24.     No security for GRM's claims has been posted by XCoal or anyone acting on its behalf to date.

25.     XCoal cannot be found within this District within the meaning of Rule B, including as set out in this Court's Order and plaintiff's submissions in 1:21-cv-00766-ALC *Classic Maritime Inc. v. XCoal Energy and Resources* filed in this Court, but is believed to have,

5

or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District, including but not limited to those named Garnishee herein.

**Prayer for Relief**

WHEREFORE, GRM prays:

A.      That, in response to Count I, process of maritime attachment and garnishment be issued to garnish and attach property of XCoal in the amount of at least **$1,868,750.00** ($1,818,750.00 as detailed above, and contractual attorneys' fees, costs and interest of at least $50,000), in security of GRM's claims to be asserted in the Arbitration, upon that amount being garnished and attached, this action to be stayed and the amount to await final award in the Arbitration and judgment entered on such award by this Court;

B.      That, in response to Count II, since Defendant cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of XCoal's tangible or intangible property or any other funds held by Garnishee, up to the amount of at least the amount demanded herein to secure GRM's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

C.      That as provided in Supplemental Rule B, that such person over 18 years of age be appointed as moved for herein pursuant to Supplemental Rule B and Fed. R. Civ. P. 4(c) to serve process of Maritime Attachment and Garnishment in this action;

D.      That this Court award GRM such other and further relief that this Court deems just and proper.

Dated:  March 12, 2021.

/s/ J. Stephen Simms
J. Stephen Simms (*pro hac vice* pending)
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Telephone:    410-783-5795
Facsimile:     410-510-1789
Email:  jssimms@simmsshowers.com

Counsel for GRM Resources Pte. Ltd.

## VERIFICATION

I, J. Stephen Simms declare as follows:

I am a principal of Simms Showers LLP, counsel for plaintiff GRM ("Plaintiff"). I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge.  I have reviewed documentation provided to me by Plaintiff's representatives and corresponded with Plaintiff's representatives regarding this matter. I am authorized by Plaintiff to make this verification, and the reason for my making it as opposed to an officer or director of Plaintiff is that there are none within the jurisdiction of this Honorable Court.

As attorney for Plaintiff, I hereby certify pursuant to Local Admiralty B.1 to the Court and the Clerk of the Court that I have made a diligent and reasonable search and inquiry to ascertain the name and address of a person or party upon who can be served process *in personam* which will bind XCoal Energy and Resources LLC within the meaning of Supplemental Rule B.

I have checked white and yellow pages for New York listed on the Internet and did not find a listing for the Defendant.  I also checked the New York Department of State, Division of Corporations online database which showed that the Defendant is registered to do business in New York State as a foreign entity, with its agent in Albany outside of this District, but I was also unable to find any other information to indicate that the Defendant actually conducts

business in the state, have a general or managing agent with the District, or a place of business in the State.

I also consulted additional sources including Westlaw and Lexis (Accurint) corporation search online resources, and was unable to find Defendant within the District or within the State of New York within the meaning of Supplemental Rule B.

Further, this Court determined in 1:21-cv-00766-ALC *Classic Maritime Inc. v. XCoal Energy and Resources*, that Defendant is not found within this District within the meaning of Supplemental Rule B.

To the best of my knowledge, based upon such diligent search and inquiry I submit that Defendant cannot be found within the district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 12, 2021.

/s/ J. Stephen Simms
J. Stephen Simms (*pro hac vice* pending)
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Telephone:   410-783-5795
Facsimile:    410-510-1789
Email:  jssimms@simmsshowers.com

Counsel for GRM Resources Pte. Ltd.